Bruce H. Wakuzawa, 4312-0
bruce@brucewakuzawa.com
THE LAW OFFICE OF BRUCE H. WAKUZAWA
The Dillingham Transportation Building
735 Bishop Street, Suite 433
Honolulu, Hawaii 96812
Tel:  (808) 523-1007
Fax:  (808) 356 3303

Carolyn H. Cottrell (admitted *pro hac vice*)
ccottrell@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

Shanon J. Carson (admitted *pro hac vice*)
scarson@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604

Attorneys for Plaintiff and the Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LYNNE DONKERBROOK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>TITLE GUARANTEE ESCROW SERVICES, INC.,<br><br>Defendant. | Case No. 1:10-cv-00616-LEK-RLP<br><br>PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS<br><br>Judge: The Hon. Leslie E. Kobayashi |

## I.      INTRODUCTION

Pursuant to the Court's Order of June 26, 2011 (Dkt. No. 55), Class Counsel for Plaintiff Lynne Donkerbrook ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully set forth the following supplemental memorandum in support of their Motion for Attorney's Fees and Costs (Dkt. No. 44), and seek the Court's approval of attorneys' fees in the amount of one third of the gross settlement fund, or $366,666.67, and out of pocket costs in the amount of $14,452.69.  Pursuant to the terms of the Settlement Agreement, Defendant does not oppose Plaintiff's request.

## II.     LEGAL ARGUMENT

### A.      Class Counsel Incurred Reasonable Attorneys' Fees In This Case Based On a Lodestar Cross-Check

Class Counsel submitted their Motion for Attorneys' Fees and Costs on June 20, 2011 ("Fee Motion") (Dkt. No. 44).  In the Fee Motion, Class Counsel requested approval of attorneys' fees based on the common fund doctrine, in the amount of one third of the Gross Settlement Amount.  Id.  In its June 26, 2011 Order, the Court held that it must review all of the proposed attorneys' fees in this case for reasonableness. (Dkt. No. 55.)   In reviewing the proposed fees for reasonableness, the Court stated that it will use the principles of the traditional lodestar method as a guide.  Id.; see also Almodova v. City and County of

1

Honolulu, Civil No. 07-00378 DAE-LEK, 2010 WL 1372298, *7 (D. Hawai'i Mar. 31, 2010).

Under the lodestar method, the court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).

The factors the Ninth Circuit articulated in Kerr are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70. Factors one through five have been subsumed in the lodestar calculation. See Morales v. City of San Rafael, 96 F.3d 359, 364 n. 9 (9th Cir. 1996).

If the lodestar analysis applied in this case, Plaintiffs' counsel would seek fees as follows[1]:

---

[1] Class Counsel set out summaries of the time and rates expended in the declarations submitted to the Court in support of the Fee Motion.  <u>See</u> Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and For Attorneys' Fees and Costs, Ex. A (Dkt. No. 50-1) ("First Cottrell Decl."); Declaration of Shanon J. Carson in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and For Attorneys' Fees and Costs at ¶ 11 (Dkt. No. 45-1) ("First Carson Decl.");  Declaration of Bruce H. Wakuzawa in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and For Attorneys' Fees and Costs at ¶ 3 (Dkt. No. 45-3) ("First Wakuzawa Decl.").  Counsel has incurred additional fees since filing their declarations on June 20, 2011, in connection with the Court's hearing and in order to prepare this Supplemental Memorandum.  Such additional fees are reflected in this chart and are set forth in full in the Supplemental Declaration of Carolyn H. Cottrell in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and For Attorneys' Fees and Costs.  ("Supp. Cottrell Decl."); the Supplemental Declaration of Shanon J. Carson in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and For Attorneys' Fees and Costs. ("Supp. Carson Decl."); and Supplemental Declaration of Bruce H. Wakuzawa in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and For Attorneys' Fees and Costs  ("Supp. Wakuzawa Decl.").

| Attorney/Staff | Position | Rate | Hours | Subtotal |
|---|---|---|---|---|
| **Schneider Wallace Cottrell Brayton Konecky LLP** | | | | |
| Carolyn H. Cottrell | Partner | $650 | 86.1 | $55,965 |
| Josh Konecky | Partner | $650 | .6 | $390 |
| Neil Bjorkman | Associate | $425 | 52.5 | $22,312.50 |
| Milan Laufik | Associate | $350 | 3.4 | $1,530 |
| Drew Teti | Associate | $350 | 7.3 | $2,555 |
| Lee Szor (post June 2011) | Associate | $325 | 4.2 | $1,365 |
| Lee Szor (pre June 2011) | J.D. | $200 | 45 | $9,000 |
| Mildred De La Rosa | Legal Sec'y | $135 | 1.2 | $162 |
| Charles Greenlee | Paralegal | $200 | 9.4 | $1,880 |
| Kristy Kitching | Legal Sec'y | $160 | 12.2 | $1,952 |
| Brenda Renner | Legal Sec'y | $160 | 6.8 | $1,088 |
| Alexander Simon | Clerk | $160 | 9.1 | $1,456 |
| Cathy Vittoria | Legal Sec'y | $160 | 8.5 | $1,360 |
| Tracy Eastman | Clerk | $135 | .2 | $27 |
| Ilona Gazarova | Clerk | $135 | .4 | $54 |
| Rebecca Rosales | Clerk | $135 | 4.6 | $621 |
| Faalelelei Soliai | Clerk | $135 | .1 | $13.50 |
| **Berger & Montague, P.C.** | | | | |
| Shanon J. Carson | Shareholder | $510 | 165.1 | $84,201 |
| Russ D. Henkin | Shareholder | $605 | 1.2 | $726 |
| James A. Wells | Associate | $350 | 14.4 | $5,040 |
| Sarah R. Schalman-Bergen | Associate | $350 | 62.2 | $21,770 |
| Patrick F. Madden | Associate | $280 | 2.3 | $644 |
| Mileiddys Kim | Paralegal | $240 | 10.5 | $2,520 |
| **Law Offices of Bruce H. Wakuzawa** | | | | |
| Bruce H. Wakuzawa | | $335 | **33.1** | **$11,088.50** |
| | | | | |
| | **Subtotal** | **B&M** | **255.7** | **$114,901.00** |
| | | **SWCBK** | **251.6** | **$101,731.00** |
| | | | | |
| | **Total** | | **540.4** | **$227,720.50** |

This Court has appropriately noted that, because the instant case involves a settlement, the traditional lodestar method is used merely as a guide.  (Dkt. No. 680).  The Court has also noted that it will not require billing statements that contain as much detail as statements at issue in a contested consideration.  See also Almodova, 2010 WL 1372298 at *10 (accepting attorney's representations that time spent on this case was reasonable and necessary).  Class Counsel has described the work performed on this case in detail below and in accompanying declarations, and each firm has also submitted contemporaneous detailed time and billing records as exhibits to their declarations.  See Supp. Cottrell Decl. at Ex. 1; Supp. Carson Decl. at Ex. 1; Supp. Wakuzawa Decl. at Ex. 1.

**B.     The Time Expended by Class Counsel in Prosecuting This Case Was Necessary and Reasonable**

All of the time expended by Class Counsel in prosecuting this case was reasonable and necessary to bring this case to a successful resolution.

Class Counsel initiated investigation of this case prior to filing the Complaint on behalf of Ms. Donkerbrook and the Class.  Supp. Cottrell Decl. at ¶ 9; Supp. Carson Decl. at ¶ 9.  Unlike many other jurisdictions, there have been relatively few class and collective action wage and hour cases litigated in the District of Hawai'i.  Id.  As a result, there are very few published decisions regarding the applicability of Hawai'i state statutory and common law to such cases.  Id.  Class Counsel spent a significant amount of time researching potential

5

causes of action under Hawai'i state law in addition to federal law.  Id.  In so doing, Class Counsel was able to apply their considerable expertise in litigating wage and hour cases in other jurisdictions, in order to ensure the best possible result for Ms. Donkerbrook and the Class.  Id.

After learning that Defendant was interested in exploring settlement at an early stage of the litigation, Class Counsel undertook to ensure that they would have sufficient information to reach a fair and reasonable settlement on behalf of the Class.  Supp. Cottrell Decl. at ¶ 10; Supp. Carson Decl. at ¶ 10. Class Counsel reached out to Defendant to propose a framework for mediation, in which Defendant would produce documents and information sufficient for Plaintiff to make an informed settlement demand.  Id.  After negotiating the terms of the mediation, the parties agreed to engage in good faith discussions with a mediator. Id.; see also Dkt. No. 6 (listing terms agreed upon by the parties for settlement stay).

In order to reach a swift settlement to the case, the parties agreed to an abbreviated briefing schedule prior to the mediation.  Supp. Cottrell Decl. at ¶ 11; Supp. Carson Decl. at ¶ 11.  Defendant agreed to produce documents sufficient for Plaintiff to conduct a damages analysis on December 13, 2010.  Id.  Plaintiff served her mediation brief with an initial damages analysis on December 23, 2010.

Defendant submitted its response on January 3, 3011, and Plaintiff submitted her reply on January 11, 2011.  Id.

On or around December 13, 2010, Defendant produced hundreds of pages of hard copy documents relating to its  Escrow Officers.  Supp. Cottrell Decl. at ¶ 12; Supp. Carson Decl. at ¶ 12.  These documents included, without limitation:  Ms. Donkerbrook's personnel file;  payroll registers for the Class; sign-in sheets with the time in and time out lists from the Keauhou and Kona offices; attendance reports; compensation history reports and related compensation records for the Class; employment date records for the Class; and pay policies, employee handbooks and job descriptions relevant to the Class.  Id.  Defendant also produced contact information for all Class members.  Id.

Class Counsel extensively analyzed the information produced by Defendant to prepare Plaintiff's initial mediation brief and damages analysis within 10 days. Supp. Cottrell Decl. at ¶ 13; Supp. Carson Decl. at ¶ 13.   To perform a damages calculation, Class Counsel was required to enter and combine the data that Defendant produced in various hard copy documents into an electronic database. Id.  Class Counsel created a database with all Class members; their job titles during the relevant time period; their tenure dates and number of weeks worked; their monthly and annual salaries; and their commissions awarded.  Id.  From this database, Class Counsel was able to calculate the average tenure, salary,

commissions and overtime rates for the Class.  Id.  This information was integral to laying the basis for a settlement formula in negotiations with Defendant.  Id.

In addition to the damages calculation, Class Counsel also undertook to interview dozens of Class Members regarding their claims in preparation for the mediation.  Supp. Cottrell Decl. at ¶ 14; Supp. Carson Decl. at ¶ 14.   Class Counsel drafted a detailed script to be used in calls to all Class Members regarding their job duties and the amount of time they worked per week.  Id.  Class Counsel assigned a team of attorneys and paralegals to conduct these interviews.  Id.  The team conducting the interviews drafted and circulated memoranda detailing the results of their calls.  Id.   This information was critical to establishing a basis for Plaintiff's settlement demand, and ultimately formed the basis for the tiered settlement formula agreed upon by the parties.  Id.   Despite the significant time constraints, Class Counsel completed the interviews and the damages calculation within the abbreviated briefing period.  Id.  Accordingly, Schneider Wallace Cottrell Brayton Konecky LLP ("SWCBK") and Berger & Montague worked together to appropriately staff these projects so that they would be completed in the limited amount of time available to the Plaintiff.  Id.

After conducting this investigation, Class Counsel prepared a detailed mediation statement, which included both the results of their factual analysis and investigation, as well as a thorough analysis of the legal and procedural issues in

this case.  Supp. Cottrell Decl. at ¶ 15; Supp. Carson Decl. at ¶ 15.  Defendant

prepared and served a response to Plaintiff's mediation statement on Plaintiff and

the mediator, and Class Counsel prepared a detailed reply mediation statement.  Id.

The lead attorneys for both firms working on the case, Carolyn Cottrell and

Shanon Carson, travelled to Hawai'i for the mediation before Gerald Sekiya, Esq.

on January 14, 2011.  Supp. Cottrell Decl. at ¶ 16; Supp. Carson Decl. at ¶ 16.  The

parties negotiated and agreed to a settlement as a result of intense telephone

negotiations following the mediation.  Id.

Following the mediation, Class Counsel undertook to draft and finalize the

settlement agreement, and, after conferring with the Court, negotiated a settlement

for Ms. Donkerbrook's individual claim.  Supp. Cottrell Decl. at ¶ 17; Supp.

Carson Decl. at ¶ 17.  These settlement negotiations were quite extensive, and were

primarily conducted by the lead partners working on the case, Carolyn Cottrell and

Shanon Carson.  Id.  Class Counsel spent a significant amount of time to ensure

that all provisions of the settlement agreement were in the best interests of the

Class.  Id.

Class Counsel prepared the motion for preliminary and final approval of the

settlement, and has worked with the Claims Administrator to ensure that the notice

to the Class was properly administered.  Supp. Cottrell Decl. at ¶ 18; Supp. Carson

Decl. at ¶ 18.  Class Counsel will continue to perform work necessary to bring this

case to a conclusion and ensure that the claims distribution process is properly administered.  Id.

The settlement negotiated by Class Counsel resulted in Defendant agreeing to pay a Gross Settlement Amount of $1,100,000.00.  After notice to all 135 Class Members, 114 Class Members -- ***approximately 84 percent of all Class Members*** --have submitted valid and timely Claim Forms.  See Supplementary Declaration of Stacey Roe Regarding Plaintiff's Motion for Final Approval of Class Action Settlement ("Supp. Rust Decl.") at ¶ 22. ***These Claim Forms account for an astounding 95 percent of the total eligible weeks for the Class***.  Id.  In the experience of Class Counsel, this is one of the highest rates of participation in an employment wage and hour class action settlement.  Supp. Cottrell Decl. at ¶ 6; Supp. Carson Decl. at ¶ 6.

As a result of the settlement negotiated by Class Counsel, these Class Members will receive a significant sum for their back pay, without having to endure the inconvenience of responding to discovery, or enduring a lengthy trial.  Id. at ¶ 4.  Eligible Class Members who have elected to participate in the settlement will receive an average amount of ***$5,779.65***.  Supp. Rust Decl. at ¶ 23.  The highest value of any individual claim by an Eligible Class Member is estimated to be ***$11,181.85***.  Id.  This is a tremendous benefit to the Class.  Supp. Cottrell Decl. at ¶ 5; Supp. Carson Decl. at ¶ 5.  Significantly, with 84 percent of the Class

10

participating, ***not a single Class Member has objected to the settlement or to Class Counsel's request for fees***.  Supp. Rust Decl. at ¶ 16; Supp. Cottrell Decl. at ¶ 3; Supp. Carson Decl. at ¶ 3.

The time that Class Counsel has expended (and will continue to expend) in this case is all reasonable and necessary to accomplishing such a beneficial settlement for the Class.  See Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008) ("It must ... be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee.... By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").  The time expended by Class Counsel supports the approval of the requested fee award.

## C.   Class Counsel's Hourly Billing Rates Are Reasonable

As described below, Class Counsel's hourly billing rates are reasonable and have been approved by other district courts.  The Court should apply rates from outside Hawai'i due to the complex nature of the case and the expertise of counsel in litigating wage and hour class and collective actions.

11

### 1. <u>In State Attorney</u>

Bruce H. Wakuzawa was admitted to the Hawai'i bar in 1986 and served as local counsel in this case.  Although he does not have significant experience in class actions or wage and hour law, he has represented individuals and businesses for over 20 years in various civil litigation matters.  <u>See</u> First Wakuzawa Decl. at ¶ 2.  He is a member of the Hawai'i State Bar Association, and he has been recognized in both The Best Lawyers in America and in Honolulu Magazine's Best Lawyers in Hawaii.  <u>Id.</u>

If this Court applied the lodestar method to Plaintiffs' requested fees, this Court should find Mr. Wakuzawa's requested hourly rate of $335 to be reasonable. This is the hourly rate that Mr. Wakuzawa has charged for all legal representations (with the exception of pure contingent-fee, long-time clients, and *pro* bono work). <u>Id.</u> at ¶ 5. Courts in this district have approved similar hourly billing rates for law firm partners practicing in Hawai'i.  <u>See</u> <u>Shea v. Kahuku Housing Found., Inc.</u>, No. 09-00480-LEK-RLP, 2011 WL 1261150, *6 (D. Hawai'i Mar. 31, 2011) (approving hourly rate for partner with Hawai'i based practice of $350); <u>Ko Olina Devel., LLC v. Centex Homes</u>, No. 09-00272-DAE-LEK, 2011 WL 1235548, *9-11 (Mar. 29, 2011) (same).

## 2.   <u>Out of State Attorneys</u>

Under the lodestar method, the Court must generally award out-of-state counsel attorneys' fees according to the prevailing market rates in Hawai'i. <u>See Webb v. Ada County</u>, 285 F.3d 829, 840 & n. 6 (9th Cir. 2002); <u>see also</u> <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir.1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). The Court may apply rates from outside Hawai'i if local counsel is unavailable, however, either because they are unwilling to take the case or because they lack the level of experience and expertise to do so. <u>See</u> <u>Gates</u>, 987 F.2d at 1405.

In order to employ the exception, the party seeking fees need not prove an unsuccessful search for local counsel. <u>In re Hawaiian Airlines, Inc.</u>, No. 03-00817, 2008 WL 185649, *4 (Bkrtcy D. Hawai'i Jan. 22, 2008) (applying counsel's regular rates based on finding of unavailability of uniquely qualified local counsel). "The failure to solicit local counsel is not necessarily fatal to proving unavailability. In establishing unavailability, <u>Gates</u> allows proof of either unwillingness or inability due to lack of experience, expertise, or specialization. There is no requirement that plaintiffs prove both." <u>Id.</u> (citing <u>Barjon v. Dalton</u>, 132 F.3d 496, 501-502 (9th Cir. 1997).

13

Here, the Court should apply rates from outside Hawai'i.  Class Counsel have considerable experience and expertise in class and collective action wage and hour litigation.  Practice in the narrow area of wage and hour class action litigation requires skill, knowledge and experience in two distinct subsets of the law: a) wage and hour law; and b) class action law.  First Carson Decl. at ¶ 5.  Expertise in one does not necessarily translate into experience in the other.  Id.  The issues presented in this case required more than just a general appreciation of wage and hour law and class action procedure, as both areas of practice are rapidly developing and constantly in flux.  Id.  As described below, Plaintiff's counsel has significant experience in FLSA and similar wage and hour litigation, as well as in complex class and collective action litigation.

Moreover, the arrangement between Class Counsel also reflects the reality of large employment wage and hour class actions where, because of the great risk involved, multiple firms with a national practice work together to spread the risk.  Supp. Cottrell Decl. at ¶ 42; Supp. Carson Decl. at ¶ 41.  The realities of the legal market for class action employment wage and hour litigation, where firms from multiple jurisdictions regularly co-counsel, require that the market rate for each attorneys' home market apply.  Id.

As a result, the Court should apply Class Counsel's regular rates from outside of Hawai'i, which have been approved by other district courts.

14

### a)   Attorneys at Schneider Wallace Cottrell Brayton Konecky LLP

SWCBK specializes in class action litigation in both federal and state court. SWCBK is regarded as one of the leading private plaintiff's firms in employment and civil rights class actions. SWCBK has acted or is acting as class counsel in numerous cases. First Cottrell Decl. at ¶ 4 (listing cases). The rates charged by SWCBK are regularly accepted and approved in class and collective action wage and hour litigation in Ninth Circuit federal courts. Id. at ¶¶ 12-13, Exs. C and D; see also Thieriot v. Celtic Ins. Co., 2011 WL 1522385, *6 (N.D. Cal. Apr. 21, 2011) (approving fee award in the amount of 33 percent of the common fund, resulting in multiplier of 1.94, and holding that Schneider Wallace's rates were "reasonable and consistent with the market").

Carolyn H. Cottrell has been practicing law since 1994 and is licensed to practice in California, as well as in various federal district and appellate courts. She has been a member of SWCBK since 1995. Id. at ¶ 4. She has litigated hundreds of wage and hour, employment discrimination and civil rights actions, and she manages many of the firm's current cases in these areas. Id. Ms. Cottrell was recently named one of the "Top Women Litigators for 2010" by the Daily Journal. Id. Ms. Cottrell is a graduate of the University of the Pacific, McGeorge School of Law.

Ms. Cottrell was the lead partner on this case for SWCBK.  Id. at ¶ 15.  She

directed and supervised the work of the associates at her firm, conducted a legal

analysis of the facts presented by this case and assisted in presenting legal

arguments to opposing counsel.  Id.  She reviewed and revised all pleadings,

submissions and correspondence in this action, including the complaint, the

procedural motions, the mediation statement, and the preliminary and final

approval papers.  Id.  She oversaw the class member interview process and

reviewed the results of the interviews.  Id.

Joshua Konecky is a partner at SWCBK.  Mr. Konecky received his Juris

Doctor from New York University School of Law in 1995.  Supp. Cottrell Decl. at

¶ 21.  He has substantial experience in the area of employment and civil rights law.

Mr. Konecky's practice involves the representation of plaintiffs under the Fair

Labor Standards Act, Title VII of the Civil Rights Act of 1964, Section 504 of the

Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, and state

labor and civil rights laws.  Id.  He has actively participated in more than thirty

class actions filed pursuant to these laws, including several cases raising issues of

first impression.  Id.  In 2010, the Consumer Attorneys of California honored Mr.

Konecky as a finalist for the Consumer Attorney of the Year Award, which

recognizes attorneys for using skill and determination to create a more just society

for consumers in California.  Id.  In 2011, Mr. Konecky was selected for inclusion

on the Northern California Super Lawyers list, which is reserved for only five percent of attorneys in Northern California each year.  Id.  Mr. Konecky currently serves on the Board of Directors for the following institutions: Legal Aid Society of San Francisco – Employment Law Center; Disability Rights Advocates; and the Center on Race Poverty and the Environment.  Id.

Neil Bjorkman was formerly an associate at SWCBK.  Id. at ¶ 22.  Mr. Bjorkman's practice concentrates on wage and hour class actions. Mr. Bjorkman received his B.A. from Saint John's University in Collegeville, Minnesota and, in 2007, his Juris Doctor from University of Wisconsin Law School.  Id.  Mr. Bjorkman conducted legal and factual research regarding the nature and extent of the claims, assisted in drafting the Complaint, communicated with Ms. Donkerbrook and other class members for purposes of factual investigation, and assisted with fact gathering.  Id.  Mr. Bjorkman also participated in the compilation of data necessary for analysis of Defendant's compensation practices.  Id.

Milan Laufik was formerly an associate at SWCBK.  Id. at ¶ 23.  Mr. Laufik's practice concentrated on wage and hour and consumer class actions.  Id. He earned his B.A. from University of California, Berkeley, and, in 2006, received his Juris Doctor from Boston University School of Law.  Id.  Mr. Laufik's work in this case consisted of conducting legal research relating to class damages.  Id.

Lee Szor is an associate at SWCBK.  Id. at ¶ 24.  His primary practice area focuses on class action cases involving employment and consumer rights.  Id.  Mr. Szor received his B.A. from Tulane University in New Orleans, Louisiana and, in 2010, his Juris Doctor from The University of Texas School of Law.  Id.  Prior to May 2011, Mr. Szor conducted legal and factual research relating to the claims, reviewed documents, and assisted in drafting Plaintiff's Motion for Preliminary Approval of Settlement.  Id.  Mr. Szor passed the California bar examination in May 2011 and was admitted to practice law in California in June 2011.  Id.  Since that time, he has drafted documents submitted in support of Plaintiffs' Motion for Final Approval of Settlement and for Attorneys' Fees and Costs and assisted with this supplemental briefing.  Id.

Drew Teti was formerly an associate at SCWBK.  Id.  at ¶ 25.  Mr. Teti's practice focused on wage and hour class actions.  Mr. Teti received his B.A. from the University of California, Berkeley, and, in 2005, received his Masters Degree from the University of Chicago.  Id.  In 2009, Mr. Teti received his Juris Doctor from University of California, Hastings College of the Law.  Id.  Mr. Teti also participated in the compilation of data necessary for analysis of Defendant's compensation practices.  Id.

### b)   Attorneys at Berger & Montague, P.C.

Berger & Montague, P.C. specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States.  See First Carson Decl. at ¶ 3.  The firm's Labor and Employment Department has extensive experience representing employees in class action litigation.  Id.  In 2009, the firm's Labor and Employment Department was named as one of the top employment plaintiffs law firms by Law360.  Supp. Carson Decl. at ¶ 21.  The rates charged by Berger & Montague are regularly accepted and approved in class and collective action wage and hour litigation in Ninth Circuit federal courts.  Id. at ¶ 13; see also Banuelos, et al. v. XL Four Star Beef Holdings, Case No. 07-cv-00422, ELJ (D. Idaho Feb. 2, 2010); Salcido, et al. v. Cargill Meat Solutions Corp., et al., Case Nos. 1:07-cv-01437-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal. May 29, 2009).

Shanon Carson is a Shareholder at Berger & Montague, P.C. and heads the firm's Labor and Employment Department.  He has been practicing law since 2000 and is licensed to practice in Pennsylvania, as well as in various federal district and appellate courts.  He has extensive experience in litigation on behalf of employees, and he is currently serving as lead or co-lead counsel in many employment class and collective actions in federal courts across the country, including unpaid wage

cases similar to this case.  Id. at ¶ 4.  Mr. Carson is a graduate of the Dickinson School of Law of the Pennsylvania State University.  Supp. Carson Decl. at ¶ 21.

On this case, Mr. Carson was the lead partner at Berger & Montague.  He directed the work of the other attorneys and staff at his firm, conducted a legal analysis of the facts presented by this case, and presented legal arguments to opposing counsel.  Id. at ¶ 20.  With Ms. Cottrell, Mr. Carson 1) oversaw, managed, assigned and coordinated duties of a team of attorneys throughout this litigation; 2) devised and implemented strategy and participated in numerous meetings and telephone conferences with Defendant's counsel related to the litigation and settlement; and 3) directed the mediation that resulted in the settlement, and negotiated the details and terms of the settlement agreement.  Id.

Russell D. Henkin is a Shareholder at Berger & Montague.  Id. at ¶ 23.  He has been practicing law since 1973, and has extensive experience in complex class and collective actions, including wage and hour litigation.  Id.  Mr. Henkin is a graduate of the University of Pennsylvania Law School.  Id.

James Wells is a senior associate in the firm's Labor and Employment Department and has been practicing law since 1999.  Id. at ¶ 24.  Mr. Wells is licensed to practice in Pennsylvania, as well as in various federal district and appellate courts.  Id.  Since 2007, Mr. Wells has worked on wage and hour class and collective actions, like this one, which involve hundreds or thousands of class

members and opt-in plaintiffs.  <u>Id.</u>  Mr. Wells has had substantial responsibility in all stages of litigation, from case initiation through discovery, summary judgment, trial and settlement.  Mr. Wells is a graduate of Temple Law School.  <u>Id.</u>  In this case, Mr. Wells assisted in discovery issues, including conducting interviews of potential class members in preparation for the mediation.  <u>Id.</u>

Sarah Schalman-Bergen has been practicing law since 2007 and is licensed to practice in Pennsylvania, as well as in various federal district and appellate courts.  <u>Id.</u> at ¶ 25.  Since 2009, Ms. Schalman-Bergen has worked primarily on wage and hour class and collective actions, like this one, which involve hundreds or thousands of class members and opt-in plaintiffs.  <u>Id.</u>  Ms. Schalman-Bergen has had substantial responsibility in all stages of litigation, from case initiation through discovery, summary judgment, trial and settlement.  Ms. Schalman-Bergen is a graduate of Harvard Law School.  <u>Id.</u>

In this case, Ms. Schalman-Bergen oversaw the data entry and interview projects that Class Counsel conducted in preparation for the mediation.  <u>Id.</u> at ¶ 26. She conducted a detailed damages analysis of the database that Class Counsel created in preparation for mediation, and created the damages formula that formed the basis for the settlement in this case.  <u>Id.</u>  She also drafted a number of the briefs in this case, including Plaintiff's Mediation Statement and Reply, the Motion for

Attorneys' Fees and Costs, and Supplement, and the Motion for Final Approval of Class Action Settlement.  <u>Id.</u>

Patrick F. Madden has been practicing law since 2010 and is licensed to practice in Pennsylvania.  <u>Id.</u> at ¶ 27.  Since he began practice, Mr. Madden has worked primarily on wage and hour class and collective actions, like this one, which involve hundreds or thousands of class members and opt-in plaintiffs.  <u>Id.</u> Mr. Madden is a graduate of Temple University Law School.  <u>Id.</u>  In this case, Mr. Madden assisted in finalizing Plaintiff's Motion for Attorneys' Fees and Costs, as well as Plaintiff's Motion for Final Approval of Class Action Settlement.  <u>Id.</u>

### D.      <u>Support Staff</u>

The fees at issue also reflect work done by Schneider Wallace Cottrell Brayton & Konecky and Berger & Montague support staff, including paralegals, clerks and legal assistants.  Although when applying the lodestar analysis, this Court typically excludes time spent on clerical or ministerial tasks this Court has recognized that litigating an FLSA action which involves multiple class members and potential opt-in plaintiffs presents unusual case management requirements.  <u>Almodova</u>, 2010 WL 1372298, at *10.  Thus, some tasks, such as data entry, which might not be compensable in other cases, should be compensable in the instant case.  *Id.*

The paralegals and clerks in this case performed work on more than the usual case management issues. They entered data provided only in hard-copy format that was critical to Plaintiff's damages analysis and provided the basis for determining the settlement formula in this case. They interviewed dozens of Class Members regarding their claims. See supra Section B. In addition, Class Counsel utilized the support staff in this case to ensure that they would have time to properly analyze the data and documents provided by Defendant during the abbreviated briefing schedule for the mediation that occurred over the holidays. As a result, their work should be considered compensable as part of this Court's lodestar cross-check analysis.

1.      Support Staff at Schneider Wallace Cottrell Brayton & Konecky

Charles Greenlee is a 2008 graduate of University of California Santa Cruz. He has a Paralegal Studies certificate he earned from San Francisco State University in 2009. Supp. Cottrell Decl. at ¶ 26. He has been employed by SWCBK as a paralegal since 2010. Id. Mr. Greenlee's work on this case consisted of interviewing current and former employees and updating settlement class members regarding the status of the settlement and case. Id.

Kristy Kitching was formerly employed by SWCBK as a legal secretary. Id. at ¶ 27. Ms. Kitching's work on this case primarily involved a detailed data entry project regarding Defendant's payroll and compensation documents. Id. Ms.

Kitching also performed administrative duties relating to this case, including preparing and coordinating the submission of court filings.  Id.

Brenda Renner was formerly employed by SWCBK as a legal secretary. Ms. Renner's work on this case was administrative in nature.  Id.  at ¶ 28.  She primarily assisted with court filings.  Id.

Alexander Simon is a 2009 graduate of University of California, Berkeley. Id.  at ¶ 29.  Mr. Simon was formerly employed by SWCBK as a clerk.  Id.  Mr. Simon's work on this case was similar to Mr. Greenlee's described above.  Id. Specifically, he interviewed current and former employees and communicated with settlement class members regarding the status of the lawsuit.  Id.

Cathy Vittoria was employed by SWCBK as a legal secretary starting in 2006 and attended the California State University East Bay Paralegal Studies Program.  Id.  at ¶ 30.  Ms. Vittoria's work on this case included preparing court filings, researching court rules, drafting correspondence and other documents.  Id.

 2. Support Staff at Berger & Montague

Milledys Kim has worked as a paralegal for Berger & Montague beginning in 2010.  Supp. Carson Decl. at ¶ 28.  Ms. Kim, however, is a graduate of Temple Law School.  Id.  Since joining Berger & Montague, Ms. Kim has worked on wage and hour lawsuits, such as this one.  Id.  For the current lawsuit, Ms. Kim assisted in entering provided only in hard-copy format that was critical to Plaintiff's

damages analysis and provided the basis for determining the settlement formula in this case. Id. Berger & Montague does not bill clerical time. Id.

In sum, the work performed by Class Counsel all was reasonable and necessary to the successful prosecution of this case. Throughout the case, Class Counsel made significant efforts toward the efficient allocation of work between the co-counsel firms and within the co-counsel firms. Supp. Cottrell Decl. at ¶ 39; Supp. Carson Decl. at ¶ 38. Partners in the firms coordinated their work assignments on a regular basis to prevent unnecessary duplication of work across the firms. Id. In doing so, Class Counsel generally assigned initial drafting of the complaint, briefs and motions to associates, with editing done by partners. Id. at ¶ 39, 40. The bulk of the interviews performed by Class Counsel were also conducted by associates, paralegals and clerks, with supervision by the partners. Id.. Overall, Class Counsel assigned as much work as they could to attorneys with lower billing rates when feasible and appropriate to protect the interests of the Class. Id..

Having two main co-counsel firms work on the case together added substantial value to the case, as borne out by the ultimate relief achieved for the Class. Id. at ¶ 40, 41. By bringing different attorneys and firms together, Class Counsel were able to work together to develop sophisticated and effective

25

strategies for pursuing the claims of Plaintiff and the Class.  Id.  The work

performed by Class Counsel supports the requested fee.

### E.      The Requested Multiplier is Reasonable

The amount requested by Class Counsel is greater than the total lodestar

amount.  If this Court applied the lodestar analysis in this case, Plaintiff's total fees

incurred to date would result in a multiplier of 1.61.   Supp. Cottrell Decl. at ¶ 43.

Plaintiff's counsel anticipates that they will have to spend additional time on this

case in preparing for and attending the Final Fairness Hearing, as well as in

overseeing the claims process on behalf of the Class.   Id. at ¶ 33.

The requested multiplier is well within the range of attorneys' fee awards

that courts in the Ninth Circuit have found to be reasonable. See, e.g., Vizcaino v.

Microsoft Corp., 290 F.3d 1043, 1051 (9th Cir.2002) (upholding an attorneys' fee

award that resulted in a multiplier of 3.65); Steiner v. American Brodcasting Co.

Inc., 248 Fed. 780, 783 (9th Cir. 2007) (upholding fee award that resulted in

multiplier of 6.85); Bond v. Ferguson Enterprises, Inc., No. 1:09-cv-1662 OWW

MJS, 2011 WL 2648879 (E.D. Cal. Jun. 30, 2011) (approving fee request with

multiplier of 1.75 in wage and hour class action settlement); In re Wachovia Corp.

"Pick-A-Payment" Mortg. Marketing and Sales Practices Litig., No. 5:09-md-

02015-JF, 2011 WL 1877630, *7 (N.D. Cal. May 17, 2011) (approving fee request

of one third of settlement fund, which resulted in multiplier of 2.2); City of

Roseville Employees' Retirement Sys. v. Micron Tech., Inc., No. 06-cv-85-WFD, 2011 WL 1882515, *7 (D. Idaho, Apr. 28, 2011) (approving fees with multiplier of 2.72, and noting that such a multiplier is "relatively standard");   see also Pl. Mot. For Attorneys' Fees and Costs, Dkt. No. 206 at pp. 5-15.

Moreover, the Court of Appeals for the Ninth Circuit has explicitly held that, when performing a lodestar cross-check on a common fund fee request from a settlement, district courts need not award class counsel a lesser fee for settling a case quickly.  Vizcaino, 290 F.3d at 1050 n.5.  "[I]n many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  Id.; see also Lewis v. Starbucks Corp., No. 2:07-cv-00490, 2008 WL 4196690, *7 (E.D. Cal. Sept. 11, 2008) (preliminarily approving class action employment settlement with fee request based on common fund, and noting that strict use of lodestar when early settlement is reached would "punish Plaintiff's counsel" and "thus may impede settlement efforts in similar cases"); Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1268 (D.C. Cir. 1993) (noting that strict use of lodestar approach is a "strong incentive against early settlements since attorneys will earn more the longer a litigation lasts").

Here, the requested multiplier is reasonable and is well within the range of multipliers approved by district courts in this Circuit and upheld by the Court of

Appeals for the Ninth Circuit.  Class Counsel conducted this litigation efficiently, vigorously and diligently to achieve an excellent settlement on behalf of the Class.

### F.    The Additional Kerr Factors Support The Requested Multiplier

Moreover, consideration of the additional <u>Kerr</u> factors support the requested multiplier and counsel in favor of approval of the requested fee.  <u>See also</u> Fee Motion at Sections B through E.

1.    The Contingent Nature of the Fee Agreement Supports the Requested Fee

Although the Court of Appeals for the Ninth Circuit held that the sixth factor, whether the fee is fixed or contingent may not be considered in the lodestar calculation in cases involving fee shifting statutes, it has permitted such considerations in common fund settlements. <u>Compare</u> <u>Davis v. City & County of San Francisco</u>, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993) <u>with</u> <u>In re Wash. Pub. Power Supply Sys. Sec. Litig</u>., 19 F.3d 1291, 1294 (9th Cir. 1994).

Here, Class Counsel seeks a fee award based on the common fund approach, such that consideration of the fee status as contingent is appropriate.  See <u>Fischel v. Equitable Life Assur. Society of U.S.</u>, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

Class Counsel entered into a retainer agreement with Ms. Donkerbrook on a fully contingent basis. Supp. Cottrell Decl. at ¶ 47. Class Counsel agreed to advance all costs and expenses necessary to prosecute the litigation. Id. In agreeing to such an arrangement, Class Counsel took considerable risk, as there was no guarantee they would recoup their fees or costs. Id. Courts have "routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" in which lead counsel took the case on a contingent fee basis. In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d at 1295-6.

Class Counsel's retainer agreement with Ms. Donkerbrook also provided that Class Counsel may seek an amount equal to one third of the total recovery in the event of either an individual or class/collective action recovery. Supp. Cottrell Decl. at ¶ 47. The expectations of the Plaintiff accordingly support the requested award.

### 2. The Results Obtained For the Class And Their Reaction Strongly Supports The Requested Award

As the deadline for submitting timely Claim Forms has now passed, approximately ***84 percent*** of all Class Members have submitted valid and timely claim forms. Suppl. Rust Decl. at ¶ 22. These submitted Claim Forms account for approximately ***95 percent of the total weeks for the Class***. Id. This results in an average distribution of approximately $5,779.65 per Eligible Class Member, with the highest payout at approximately $11,181.85. Id. at ¶ 23.

29

In addition, the attorneys' fees and costs agreed to by the parties were preliminarily approved by the Court as fair and reasonable.  Subsequently notice was sent to the Class.  Importantly, ***not a single Class Member has objected to the requested fee in this case or opted-out of the settlement***.  Id. at ¶ 16.  This strongly supports the requested fee amount.  See Thieriot, 2011 WL 1522385, at *6 (the fact that no members of the class objected to the proposed 33 percent fee award supports such an award); In re Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1048 (N.D. Cal. 2008) (finding factor favored approval where no objections to fee were raised in response to notice being sent).

The recovery obtained by Class Counsel on behalf of the Class is tremendous.  Class Members received substantial payments for relatively small amounts of back pay for time worked for Defendants.  Considering these factors in addition to performing the lodestar check, this Court should finally approve the requested fee amount as reasonable.

### G.    Class Counsel's Lodestar Supports the Requested Fee Even If Forum Rates Are Applied

As described above, the Court should use the market rates of the markets in which they practice are appropriate for the Court when conducting the lodestar check.  See supra Section C.  However, if the Court applied the lodestar analysis as a cross-check based on the forum hourly rates, based on the rates approved by the

Court for attorneys and staff of similar experience in Almodova,[2] Class Counsel's

reasonable fees would be as follows:

| Attorney/Staff | Position | Rate | Hours | Subtotal | Forum Rate | Revised Lodestar |
|---|---|---|---|---|---|---|
| **Schneider Wallace Cottrell Brayton Konecky LLP** | | | | | | |
| Carolyn H. Cottrell | Partner | $650 | 86.1 | $55,965 | $350 | $30,135 |
| Josh Konecky | Partner | $650 | .6 | $390 | $350 | $210 |
| Neil Bjorkman | Associate | $425 | 52.5 | $22,312.50 | $150 | $7,875 |
| Milan Laufik | Associate | $350 | 3.4 | $1,530 | $130 | $442 |
| Drew Teti | Associate | $350 | 7.3 | $2,555 | $130 | $949 |
| Lee Szor (post June 2011) | Associate | $325 | 4.2 | $1,365 | $125 | $525 |
| Lee Szor (pre June 2011) | J.D. | $200 | 45 | $9,000 | $120 | $5,400 |
| Mildred De La Rosa | Legal Sec'y | $135 | 1.2 | $162 | $50 | $60 |
| Charles Greenlee | Paralegal | $200 | 9.4 | $1,880 | $120 | $1,128 |
| Kristy Kitching | Legal Sec'y | $160 | 12.2 | $1,952 | $50 | $610 |
| Brenda Renner | Legal Sec'y | $160 | 6.8 | $1,088 | $50 | $340 |
| Alexander Simon | Clerk | $160 | 9.1 | $1,456 | $85 | $774 |
| Cathy Vittoria | Legal Sec'y | $160 | 8.5 | $1,360 | $50 | $425 |

[2] In applying the rates set out in Almodova, Class Counsel has used the rate approved for the lead partner in that case, $350, as the basis for the forum rate of Carolyn Cottrell and Shanon Carson, because they served in the similar roles of lead partners for their firms.  In addition, the rates approved in Almodova that serve as the basis for the proposed rates listed in this chart are based on rates from March 2010.  In the experience of Class Counsel, hourly rates of attorneys have increased from 2010 to 2011.  Although no increase has been accounted for here, the Court may be inclined to consider updating the approved forum rates for 2011. See Supp. Carson Decl. at ¶ 43 n.2; Supp. Cottrell Decl. at ¶ 45 n.2.

| Tracy Eastman | Clerk | $135 | .2 | $27 | $85 | $17 |
|---|---|---|---|---|---|---|
| Ilona Gazarova | Clerk | $135 | .4 | $54 | $85 | $34 |
| Rebecca Rosales | Clerk | $135 | 4.6 | $621 | $85 | $391 |
| Faalelelei Soliai | Clerk | $135 | .1 | $13.50 | $85 | $9 |
| **Subtotal** | | | **251.6** | **$101,731** | | **$49,323** |
| **Berger & Montague, P.C.** | | | | | | |
| Shanon J. Carson | Shareholder | $510 | 165.1 | $84,201 | $350 | $57,785 |
| Russ D. Henkin | Shareholder | $605 | 1.2 | $726 | $350 | $420 |
| James A. Wells | Associate | $350 | 14.4 | $5,040 | $150 | $2,160 |
| Sarah R. Schalman-Bergen | Associate | $350 | 62.2 | $21,770 | $150 | $9,330 |
| Patrick F. Madden | Associate | $280 | 2.3 | $644 | $130 | $299 |
| Mileiddys Kim | Paralegal | $240 | 10.5 | $2,520 | $120 | $1,260 |
| **Subtotal** | | | **255.7** | **$114,901** | | **$71,254** |
| **Law Offices of Bruce H. Wakuzawa** | | | | | | |
| Bruce H. Wakuzawa | | $335 | **33.1** | | | **$11,088.50** |
| | | | | | **Total** | **$131,665.50** |

Class Counsel's total lodestar based on forum rates is equal to $131,665.50.

This lodestar would result in a multiplier of approximately 2.78.  Supp. Cottrell

Decl. at ¶ 46.  Even using forum rates, the requested multiplier is still in line with

similarly requested multipliers that have been approved by the Ninth Circuit.  <u>See</u>

<u>supra</u> Section E.  Accordingly, the lodestar cross-check supports the requested fee

that 1) was negotiated by the parties as a result of arms-length bargaining with the

assistance of a mediator; 2) is in line with the reasonable expectations of Plaintiff based on her retainer agreement; 3) has not been objected to by a single Class Member despite notice being provided; and 4) reasonably compensates Class Counsel for their work in achieving such a substantial settlement from Defendant at such an early stage in the litigation.

## III.   **CONCLUSION**

For the foregoing reasons, Plaintiff submits that the Settlement Agreement provides an excellent resolution of this wage and hour case, and Class Counsel respectfully requests that the Court approve their request for $366,666.67 in attorneys' fees and $14,452.69 in reimbursement of out of pocket costs.

Dated:          July 19, 2011          Respectfully submitted,

/s/ Shanon J. Carson
Shanon J. Carson (admitted *pro hac vice*)
scarson@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604

Carolyn H. Cottrell (admitted *pro hac vice*)
ccottrell@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

Bruce H. Wakuzawa, 4312-0
bruce@brucewakuzawa.com
THE LAW OFFICE OF BRUCE H.
WAKUZAWA
The Dillingham Transportation Building
735 Bishop Street, Suite 433
Honolulu, Hawaii 96812
Tel:  (808) 523-1007
Fax:  (808) 356 3303

Attorneys for Plaintiff and the Class

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of Plaintiff's

Supplemental Brief In Support of Plaintiff's Unopposed Motion for Attorney's

Fees and Costs will be duly served on the following parties electronically through

CM/ECF as follows:


      CHARLES A. PRICE
      cprice@koshibalaw.com



Dated:  July 19, 2011        /s/ Shanon J. Carson
                    Shanon J. Carson (admitted *pro hac vice*)