IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LYNNE DONKERBROOK, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>TITLE GUARANTY ESCROW SERVICES, INC. and TITLE GUARANTY OF HAWAII, INC.,<br><br>            Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 10-00616 LEK-RLP |

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND GRANTING PLAINTIFF'S UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**

On June 20, 2011, Plaintiff Lynne Donkerbrook

("Plaintiff"), individually and on behalf of all others similarly

situated (all collectively "the Class"), filed the instant

Unopposed Motion for Final Approval of Class Action Settlement

("Final Approval Motion"), [dkt. no. 46 (motion); dkt. no. 47

(mem. in supp.),] and Unopposed Motion for Attorneys' Fees and

Costs ("Fee Motion") [dkt. no. 44 (motion); dkt. no. 45 (mem. in

supp.)].  On June 21, 2011, Plaintiff's counsel,

Carolyn H. Cottrell, Esq., filed a declaration in support of the

Final Approval Motion and a declaration in support of the Fee

Motion.  [Dkt. nos. 51, 50.]  Plaintiff's counsel,

Bruce H. Wakuzawa, Esq., filed another declaration in support of the Fee Motion on June 22, 2011. [Dkt. no. 53.] On July 19, 2011, pursuant to this Court's order, Plaintiff filed: a supplemental brief in support of the Fee Motion; [dkt. no. 58;] a supplemental declaration by Shanon J. Carson, Esq., in support of the Fee Motion; [dkt. no. 59;] a supplemental declaration by Mr. Wakuzawa in support of the Fee Motion; [dkt. no. 60;] a supplemental declaration by Stacy Roe regarding the Final Approval Motion; [dkt. no. 61;] and a supplemental declaration by Ms. Cottrell in support of the Fee Motion; [dkt. no. 62]. Defendant Title Guaranty Escrow Services, Inc. ("Defendant") did not respond to either motion.

On July 25, 2011, this matter came before the Court for a final fairness hearing for the proposed settlement[1] and a hearing on Plaintiff's Final Approval Motion. [Minutes (dkt. no. 67).] This Court previously found that the Fee Motion was suitable for disposition without a hearing. [Minute Order, filed 6/28/11 (dkt. no. 55).] Joshua Konecky, Esq., and Mr. Wakuzawa appeared on behalf of Plaintiff, and Mr. Carson appeared by telephone on behalf of Plaintiff. Charles Price, Esq., appeared on behalf of Defendant. On July 28, 2011, Plaintiff filed another declaration by Stacy Roe regarding the Final Approval

_____

[1] This Court issued its Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement on April 25, 2011 ("Preliminary Approval Order"). [Dkt. no. 41.]

2

Motion.  [Dkt. no. 68.]  For the reasons set forth below, and
after due consideration of the evidence and arguments presented
by the parties and the record in this case, the Court CONCLUDES
that good cause exists to GRANT final approval of the settlement
agreement in this action pursuant to Federal Rules of Civil
Procedure Rule 23(e) and to GRANT Plaintiff's Final Approval
Motion and Plaintiff's Fee Motion.

### BACKGROUND

Plaintiff filed her class action complaint
("Complaint") on October 21, 2010.  The Complaint challenges
Defendant's "policy and practice of failing to pay its . . .
Escrow Officers . . . overtime wages pursuant to the Fair Labor
Standards Act [("FLSA")], 29 U.S.C. § 201, *et seq.* and Hawaii
law."[2]  [Complaint at ¶ 1.]  The Complaint alleges the following
claims: failure to pay overtime wages in violation of the FLSA,
29 U.S.C. § 207 ("Count I"); unjust enrichment ("Count II"); and
failure to pay overtime wages in violation of Hawai`i Revised
Statutes § 480-2 ("Count III").  The Complaint seeks, *inter alia*:
all unpaid wages and other damages; injunctive relief; any
available penalties, including liquidated damages, threefold

---

[2] The Complaint also named Title Guaranty of Hawaii, Inc.
("TG Hawaii") as a defendant.  On November 26, 2010, United
States District Judge J. Michael Seabright approved the parties'
stipulation to dismiss all claims against TG Hawaii without
prejudice and to dismiss all claims against Defendant relating
solely to its "Title Officers".  [Dkt. no. 8.]

damages, punitive damages, and restitution; any statutory penalties, interest, and attorneys' fees and costs; and any other appropriate relief.

In the Preliminary Approval Order, this Court granted provisional approval of the following class ("the Settlement Class") pending final approval of the settlement: "All persons who were employed by Defendant as Escrow Officers during the time period from October 21, 2004 to August 29, 2010." [Prelim. Approval Order at 2.]

Judge Seabright previously approved the parties' stipulation regarding mediation. [Filed 11/24/10 (dkt. no. 6).] The parties participated in a mediation before Gerald Sekiya, Esq., and engaged in extended arms-length negotiations. As a result thereof, Plaintiff and Defendant agreed on a settlement as set forth below.

**PROPOSED SETTLEMENT**

Plaintiff and Defendant agreed to a settlement as follows:

1. Defendant shall pay $1,100,000.00 as the Gross Settlement Amount;

2. Approximately $658,880.64 will be available for distribution to Settlement Class Members who timely file valid Claim Forms ("Eligible Class Members"), **which currently amounts to an average distribution of approximately $7,398.55 per Eligible Class Member, with the highest payout at approximately $14,016.50;**

3. Plaintiff requests that a service award of $10,000.00 be awarded from the Gross Settlement Amount to Plaintiff Lynne Donkerbrook for her efforts on behalf of the Class;

4. Class Counsel seeks, in a separate motion, an award of attorneys' fees to be paid from the Gross Settlement Amount in an amount of one-third of the Gross Settlement Amount ($366,666.67);

5. Class Counsel seeks, in a separate motion, the reimbursement of their out-of-pocket costs from the Gross Settlement Amount in the amount of $14,452.69;

6. Rust Consulting, Inc. . . . , an experienced class-action settlement administrator, who has been appointed to administer this settlement, is to be paid $15,000.00 out of the Gross Settlement Amount pursuant to the Settlement Agreement; and

7. The Settlement Agreement provides for an amount of $35,000.00 to be set aside from the Gross Settlement Amount for the payment of agreed and allowed late claims or unanticipated expenses, if any.

[Mem. in Supp. of Final Approval Motion at 1-2 (emphasis in original) (footnote and citation omitted).] The parties' Settlement Agreement and Release ("Settlement Agreement") is attached to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement as Exhibit 1. [Filed 3/16/11 (dkt. no. 30-1).]

## PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE OF THE SETTLEMENT TO THE CLASS

This Court granted preliminary approval of the settlement, finding that it was "fair, reasonable, and adequate"

as required by Fed. R. Civ. P. Rule 23(e). [Prelim. Approval Order at 3.] The Court scheduled the final fairness hearing for July 25, 2011.

Plaintiff submitted a declaration on behalf of the claims administrator, Rust Consulting, Inc. ("Rust Consulting"), stating that it received a list of 135 Class members with, *inter alia*, each member's last known address. Rust Consulting updated the addresses and mailed the Class Notices and Claim Forms to the Class members via first-class mail on May 5, 2011. On June 3, 2011, Rust Consulting mailed reminder postcards to the sixty-five Class members who had not responded to the Class Notice. As of July 18, 2011, Rust Consulting received zero Class Notices that were returned by the post office with a forwarding address, and it received nine undeliverable Class Notices. Rust Consulting obtained updated addresses for all nine Class members and re-mailed the Class Notices and Claim Forms via first-class mail. [Supplementary Decl. of Stacy Roe Regarding Pltf.'s Motion for Final Approval of Class Action Settlement, filed 7/19/11 (dkt. no. 61) ("Suppl. Roe Decl."), at ¶¶ 8-10, 12-14.]

As of July 18, 2011, Rust Consulting had not received any requests to be excluded from the settlement, nor had it received any objections. Rust Consulting received 114 claim forms. Three Class members disputed the employment dates and workweeks on their pre-printed claim forms. The parties agreed

that two of the three disputes would be accepted as valid and the third would be rejected.  The total of potential work weeks was adjusted accordingly.  [Id. at ¶¶ 15-18.]

At the hearing on the Final Approval Motion, Plaintiff's counsel confirmed that no objections were received.

The Court therefore FINDS that, as required by Federal Rules of Civil Procedure Rule 23(e)(1), notice of the settlement was directed in a reasonable manner to all Class members who would be bound by the settlement.

## MOTION FOR ATTORNEYS' FEES AND COSTS

Insofar as the settling parties have allocated a portion of the settlement funds for Plaintiff's attorneys' fees and costs, this Court must examine the reasonableness of the award before it can grant final approval of the settlement.

## I.    Entitlement to Attorneys' Fees and Costs

The Settlement Agreement between Plaintiff and Defendant provides for an award of Plaintiff's attorneys' fees and costs.  Plaintiff also relies upon Federal Rules of Civil Procedure Rule 23(h) and the "common fund" doctrine.  [Mem. in Supp. of Fee Motion at 1, 3-5.]

At the outset, the Court notes that:

> "The FLSA . . . requires that a settlement agreement include an award of reasonable fees." Lee v. The Timberland Co., No. C 07-2367 JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008) (citing 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded

7

to the plaintiff or plaintiffs, allow a reasonable
attorney's fee to be paid by the defendant, and
the costs of the action")); <u>see also</u> <u>Silva v.</u>
<u>Miller</u>, No. 08-12011, 2009 WL 73164 (11th Cir.
Jan. 13, 2009).

In <u>Silva</u>, the Eleventh Circuit Court of
Appeals stated that:

> FLSA requires judicial review of the
> reasonableness of counsel's legal fees to
> assure both that counsel is compensated
> adequately and that no conflict of interest
> taints the amount the wronged employee
> recovers under a settlement agreement. FLSA
> provides for reasonable attorney's fees; the
> parties cannot contract in derogation of
> FLSA's provisions. See <u>Lynn's Food [Stores,</u>
> <u>Inc. v. United States]</u>, 679 F.2d [1350,] 1352
> [(11th Cir. 1982)] ("FLSA rights cannot be
> abridged by contract or otherwise waived.")
> (quotation and citation omitted). **To turn a**
> **blind eye to an agreed upon contingency fee**
> **in an amount greater than the amount**
> **determined to be reasonable after judicial**
> **scrutiny runs counter to FLSA's provisions**
> **for compensating the wronged employee.**

2009 WL 73164, at *2 (emphasis added).

<u>Almodova v. City & Cnty. of Honolulu</u>, Civil No. 07-00378 DAE-LEK,

2010 WL 1372298, at *6 (D. Hawai`i Mar. 31, 2010) (some

alterations in <u>Almodova</u>).[3] Thus, the FLSA supports the award of

attorneys' fees as part of the Settlement Agreement, but it also

requires this Court to review the proposed amount for

reasonableness. See <u>id.</u> at *7.

The Court notes that the "common fund" doctrine does

---

[3] The citation refers to the Findings and Recommendation to
Grant Plaintiffs' Motion for Approval of Settlement and
Attorney's Fees for Individual Plaintiffs. The district judge
adopted the findings and recommendation as his opinion and order.
2010 WL 1644971 (D. Hawai`i Apr. 20, 2010).

not apply because the parties did not follow regular common fund procedure in this case. See Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir. 2003) (citations omitted) ("Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then apply to the court for a fee award from the fund.").

Federal Rule of Civil Procedure 23(h) states: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Thus, pursuant to Rule 23(h), the parties' Settlement Agreement alone is a sufficient basis for an award of reasonable attorneys' fees to Plaintiff. The Court, however, emphasizes that it has only relied upon the parties' agreement as the basis for the entitlement to award; the Court has not relied upon the parties' representation that the requested award is reasonable. The Court will independently review the requested award for reasonableness.

## II.  <u>Amount of the Award</u>

Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number

of hours reasonably expended on the litigation" by "a reasonable

hourly rate." Hensley, 461 U.S. at 433. Second, the court must

decide whether to adjust the lodestar amount based on an

evaluation of the factors articulated in Kerr v. Screen Extras

Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been

subsumed in the lodestar calculation. Fischer, 214 F.3d at 1119

(citation omitted).

> The factors the Ninth Circuit articulated in Kerr are:
>
> (1) the time and labor required, (2) the novelty
> and difficulty of the questions involved, (3) the
> skill requisite to perform the legal service
> properly, (4) the preclusion of other employment
> by the attorney due to acceptance of the case, (5)
> the customary fee, (6) whether the fee is fixed or
> contingent, (7) time limitations imposed by the
> client or the circumstances, (8) the amount
> involved and the results obtained, (9) the
> experience, reputation, and ability of the
> attorneys, (10) the "undesirability" of the case,
> (11) the nature and length of the professional
> relationship with the client, and (12) awards in
> similar cases.

Kerr, 526 F.2d at 70. Factors one through five have been

subsumed in the lodestar calculation. Morales v. City of San

Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, the Ninth

Circuit, extending City of Burlington v. Dague, 505 U.S. 557, 567

(1992), held that the sixth factor, whether the fee is fixed or

contingent, may not be considered in the lodestar calculation.

Davis v. City & County of San Francisco, 976 F.2d 1536, 1549 (9th

Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th

Cir. 1993). Once calculated, the "lodestar" is presumptively

10

reasonable. <u>Pennsylvania v. Del. Valley Citizens' Council for</u>
<u>Clean Air</u>, 483 U.S. 711, 728 (1987); <u>see also</u> <u>Fischer</u>, 214 F.3d
at 1119 n.4 (stating that the lodestar figure should only be
adjusted in rare and exceptional cases).

Although Plaintiff does not request a lodestar award of
attorneys' fees in this case, this Court uses the fees that it
could have awarded Plaintiff under the lodestar analysis as a
gauge of the reasonableness of the attorneys' fees provided for
in the Settlement Agreement. <u>See, e.g.</u>, <u>Shea v. Kahuku Hous.</u>
<u>Found., Inc.</u>, Civil No. 09-00480 LEK-RLP, 2011 WL 1261150, at *6
(D. Hawai`i Mar. 31, 2011) (citation omitted) (stating that Court
will use the lodestar analysis as a guide to evaluate the
reasonableness of the agreed upon attorneys' fees in a settlement
of action pursuant to Rule 23(h)); <u>Almodova</u>, 2010 WL 1372298, at
*7 (stating that the Court will use the lodestar method as a
guide to review the agreed upon attorneys' fees in an FLSA
settlement for reasonableness).

If Plaintiff's counsel calculated their attorneys' fees
according to the lodestar analysis, the fees would be as follows
for counsel from Berger & Montague, P.C. ("B&M"):

| B&M Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Shanon Carson | $510 | 165.1 | $ 84,201.00 |
| Russell Henkin | $605 | 1.2 | $ 726.00 |
| James Wells | $350 | 14.4 | $ 5,040.00 |
| Sarah Schalman-Bergen | $350 | 62.2 | $ 21,770.00 |
| Patrick Madden | $280 | 2.3 | $ 644.00 |
| Mileiddys Kim - paralegal | $240 | 10.5 | $ 2,520.00 |
| | | **Total** | **$114,901.00** |

11

[Suppl. Decl. of Shanon J. Carson in Supp. of Pltf.'s Motion for
Approval of Attorneys' Fees & Costs, filed 7/19/11 (dkt. no. 59)
("Suppl. Carson Decl."), at ¶ 34, Exh. 1.]  Mr. Carson has been
practicing law since 2000 and has "extensive experience in class
actions and in litigation on behalf of employees[.]"  [Suppl.
Carson Decl. at ¶ 21.]  Mr. Henkin has been practicing law since
1973 and "has extensive experience in complex class and
collective actions, including wage and hour litigation."  [Id. at
¶ 23.]  James Wells, Sarah Schalman-Bergen, and Patrick Madden
have been practicing law since 1999, 2007, and 2010,
respectively.  [Id. at ¶¶ 24-25, 27.]  Mileiddys Kim is a
paralegal who is a law school graduate.  [Id. at ¶ 28.]

Plaintiff's counsel from Schneider Wallace Cottrell
Brayton Konecky LLP ("SWCBK") recorded the following hours in
this case:

| SWCBK Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Carolyn Cottrell | $650 | 86.1 | $ 55,965.00 |
| Joshua Konecky | $650 | 0.6 | $ 390.00 |
| Neil Bjorkman | $425 | 52.5 | $ 22,312.50 |
| Milan Laufik | $350 | 3.4 | $ 1,530.00 |
| Drew Teti | $350 | 7.3 | $ 2,555.00 |
| Lee Szor (post June 2011) | $325 | 4.2 | $ 1,365.00 |
| Lee Szor (pre June 2011) | $200 | 45.0 | $ 9,000.00 |
| Mildred De La rosa - sec'y | $135 | 1.2 | $ 162.00 |
| Charles Greenlee - paralegal | $200 | 9.4 | $ 1,880.00 |
| Kristy Kitching - sec'y | $160 | 12.2 | $ 1,952.00 |
| Brenda Renner - sec'y | $160 | 6.8 | $ 1,088.00 |
| Alexander Simon - clerk | $160 | 9.1 | $ 1,456.00 |
| Cathy Vittoria - sec'y | $160 | 8.5 | $ 1,360.00 |
| Tracy Eastman - clerk | $135 | 0.2 | $ 27.00 |
| Ilona Gazarova - clerk | $135 | 0.4 | $ 54.00 |
| Rebecca Rosales - clerk | $135 | 4.6 | $ 621.00 |
| Faalelelei Soliai - clerk | $135 | 0.1 | $ 13.50 |

[Suppl. Decl. of Carolyn H. Cottrell in Supp. of Pltf.'s Motion for Approval of Attorneys' Fees & Costs, filed 7/19/11 (dkt. no. 62) ("Suppl. Cottrell Decl."), at ¶ 36, Exh. 1.] Carolyn Cottrell graduated from law school in 1993 and has "litigated hundreds of wage and hour, employment discrimination and civil rights actions[.]" [Suppl. Cottrell Decl. at ¶ 19.] Joshua Konecky graduated from law school in 1995 and has "substantial experience in the area of employment and civil rights law." [Id. at ¶ 21.] Neil Bjorkman, Milan Laufik, and Drew Teti graduated from law school in 2007, 2006, and 2009, respectively. [Id. at ¶ 22-23, 25.] Lee Szor graduated from law school in 2010, but did not become a licensed attorney until June 2011. [Id. at ¶ 24.] Ms. Cottrell also described the qualifications and the case work for Charles Greenlee, Kristy Kitching, Brenda Renner, Alexander Simon, and Cathy Vittoria. [Id. at ¶¶ 26-30.] None of these persons, however, has extraordinary qualifications or performed unique work in this case which could not be performed by professionals in similar positions at other law firms.

Plaintiff's local counsel and his unnamed legal assistant (collectively "BHW") recorded the following hours in this case:

| BHW Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Bruce Wakuzawa | $335 | 33.1 | $11,088.50 |
| legal assistant | $ 35 | 3.4 | $   119.00 |
| | | Subtotal | $11,207.50 |
| | 4.712% State Excise Tax | | $   528.10 |
| | | **Total** | **$11,735.60** |

[Suppl. Decl. of Bruce H. Wakuzawa in Supp. of Pltf.'s Motion for Approval of Attorneys' Fees & Costs, filed 7/19/11 (dkt. no. 60) ("Suppl. Wakuzawa Decl."), at ¶¶ 2-3, Exh. 1.] Bruce Wakuzawa was admitted to the Hawai`i bar in 1986.

A.    **Reasonable Hourly Rate**

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). Under the lodestar method, this Court must generally award out-of-state counsel attorneys' fees according to the prevailing market rates in Hawai`i. See id.; see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"). This Court may apply rates from outside Hawai`i if local counsel is unavailable, either because they are unwilling to take the case or because they lack the level of experience and expertise to do so. See Gates, 987 F.2d at 1405.

This Court has previously found that qualified local counsel is available to handle FLSA actions, and this Court has declined to apply out-of-state rates for mainland counsel in FLSA

14

actions.  <u>Almodova v. City & Cnty. of Honolulu</u>, Civil No.
07-00378 DAE-LEK, 2010 WL 1372298, at *9 (D. Hawai`i
Mar. 31, 2010).  Similarly, in the instant case, the Court
declines to apply out-of-state rates, but the Court will apply
the high end of the range of rates awarded in this district in
light of the substantial qualifications of B&M and SWCBK.  <u>See</u>
<u>id.</u>

In addition to their own statements, attorneys are
required to submit additional evidence that the rate charged is
reasonable.  <u>See</u> <u>Jordan v. Multnomah City.</u>, 815 F.2d 1258, 1263
(9th Cir. 1987).  Plaintiff's counsel have not provided
additional evidence that their requested rates reflect reasonable
rates in this district, but Mr. Carson and Ms. Cottrell did
include charts of what each believes the lodestar total would be
if this Court applied the rates used in <u>Almodova</u>.  [Suppl. Carson
Decl. at ¶ 43; Suppl. Cottrell Decl. at ¶ 45.]  Further, this
Court is familiar with the prevailing rates in the community and
the hourly rates awarded within this district in other cases.

**1.   <u>B&M</u>**

Plaintiff asserts that, if the Court applied Hawai`i
rates, both Mr. Carson, who has been practicing law since 2000,
and Mr. Henkin, who has been practicing law since 1973, would be
entitled to $350 per hour.  [Suppl. Carson Decl. at ¶¶ 21, 23,
43.]  The Court agrees with Plaintiff as to Mr. Henkin's hourly

rate and finds that $350 is a reasonable hourly rate for a
Hawai`i attorney with comparable experience. For example, this
Court has awarded Paul Alton, Esq., who has approximately forty
years of litigation experience, $350 per hour in recent civil
rights cases, including class actions. Shea v. Kahuku Hous.
Found., Inc., Civil No. 09-00480 LEK-RLP, 2011 WL 1261150, at
*6-7 (D. Hawai`i Mar. 31, 2011) (considering rates awarded in
Blake, et al. v. Nishimura, et al., CV 08-00281 LEK, 2010 WL
1372420, at *9 (D. Hawai`i Mar. 31, 2010); McMillon v. Hawai`i,
Civil No. 08-00578 LEK, 2011 WL 744900, at *7 (D. Hawai`i
Feb. 22, 2011)). The Court notes that $350 is the highest hourly
rate that this Court currently awards.

        The Court, however, finds that, even applying the high
end of hourly rates for attorneys of similar experience, $350 is
excessive for Mr. Carson. The Court finds that a reasonable
hourly rate for Mr. Carson is $240, comparable to that of
Jason Kim, Esq., who has been practicing law for approximately
the same amount of time as Mr. Carson. See id.

        Plaintiff argues that, if the Court applied Hawai`i
rates, both Mr. Wells, who has been practicing law since 1999,
and Ms. Schalman-Bergen, who has been practicing law since 2007,
would be entitled to $150 per hour. Further, Mr. Madden, who has
been practicing law since 2010, would be entitled to $130 per
hour. [Suppl. Carson Decl. at ¶¶ 24-25, 27, 43.] The Court

finds these rates to be manifestly reasonable, although the Court notes that Ms. Schalman-Bergen's and Mr. Madden's rates would be on the high end of the range of rates for attorneys with comparable experience, while Mr. Wells' rate would be on the low end of the range of rates for attorneys with comparable experience.

Plaintiff argues that, if the Court applied Hawai`i rates, Ms. Kim would be entitled $120 per hour because, although she is a paralegal, she is a law school graduate. [Id. at ¶¶ 28, 48.] The Court disagrees. Ms. Kim "assisted in entering information provided only in hard-copy format". [Id. at ¶ 28.] This is not a task that requires a law school degree. This Court therefore finds that Ms. Kim's hourly rate would be limited to that of a paralegal. The Court finds that a reasonable hourly rate would be $85, which is on the high end of the range of hourly rates for paralegals in Hawai`i. See, e.g., Shea, 2011 WL 1261150, at *6-7 (awarding $75 for paralegals); Ko Olina Dev., LLC v. Centex Homes, Civil No. 09-00272 DAE-LEK, 2010 WL 3853251, at *2 (D. Hawai`i Sept. 27, 2010) (awarding $85 per hour for a paralegal with over thirty years of litigation experience).

    **2.   SWCBK**

Plaintiff asserts that, if the Court applied Hawai`i rates, both Ms. Cottrell, who has been practicing law since 1993, and Mr. Konecky, who has been practicing law since 1995, would be

entitled to $350 per hour. [Suppl. Cottrell Decl. at ¶¶ 19, 21,
45.] The Court finds that those rates would be excessive in
light of the fact that this Court has found $350 to be a
reasonable hourly rate for Mr. Henkin, who has significantly more
experience. The Court finds that a reasonable hourly rate for
both Ms. Cottrell and Mr. Konecky is $260, or slightly more than
Mr. Carson. The Court notes this is on the high end of the range
of rates for attorneys with comparable experience. See, e.g.,
Ko Olina Dev., LLC v. Centex Homes, CV. NO. 09-00272 DAE-LEK,
2011 WL 1235548, at *9-10 (D. Hawai`i Mar. 29, 2011) (awarding
$185 per hour to attorneys who had been practicing since 1993,
1996, and 1999).

        Plaintiff also claims that, if the Court applied
Hawai`i rates, Mr. Bjorkman, who has been practicing law since
2007, would be entitled to $150 per hour, and Mr. Laufik and
Mr. Teti, who have been practicing law since 2006 and 2009,
respectively, would be entitled to $130 per hour. [Suppl.
Cottrell Decl. at ¶¶ 22-23, 25, 45.] The Court finds these rates
to be manifestly reasonable in light of the reasonable hourly
rates that this Court has found for the B&M attorneys with
comparable experience.

        Plaintiff argues that a reasonable hourly rate for
Mr. Szor before he became a licensed attorney in June 2011 is
$120 and a reasonable hourly rate for Mr. Szor after that time is

18

$125. [Id. at ¶¶ 24, 45.] Based on the reasonable hourly rates
that this Court has found for Mr. Madden and Mr. Teti, this Court
finds that Mr. Szor's post-June 2011 hourly rate is manifestly
reasonable. The Court, however, finds that Mr. Szor's pre-June
2011 hourly rate is excessive and finds that $100 is a reasonable
hourly rate. See Ko Olina, 2011 WL 1235548, at *9-10 (awarding
$100 to an attorney who worked on the case as a law clerk during
law school and continued through his admission to the bar).

Plaintiff also claims that, if the Court applied
Hawai`i rates, Mr. Greenlee, a paralegal, would be entitled to
$120 per hour. [Suppl. Cottrell Decl. at ¶ 45.] The Court finds
this rate to be excessive in comparison to the reasonable rate
that this Court has found for Ms. Kim. The Court therefore finds
$85 to be a reasonable hourly rate for Mr. Greenlee.

Plaintiff argues that the SWCBK clerks would be
entitled to $85 per hour and the legal secretaries would be
entitled to $50 per hour. [Id.] First, the Court finds that $85
is excessive for legal secretaries because this is the reasonable
hourly rate for paralegals. The Court notes that, as a general
rule, "[c]lerical or ministerial costs are part of an attorney's
overhead and are reflected in the charged hourly rate." JJCO,
Inc. v. Isuzu Motors Am., Inc., Civil No. 08-00419 SOM-LEK, 2010
WL 3001924, at *12 (D. Hawai`i July 30, 2010) (alteration in

original) (citation and quotation marks omitted).[4]  The Court,

however, in recognition of the unique demands of litigating a

class action, has previously allowed the recovery of fees for

similar support personnel.  Blake, 2010 WL 1372420, at *7-9

(awarding $50 for counsel's document analysts).  The Court

therefore finds that $50 per hour is a reasonable hourly rate for

both SWCBK's legal secretaries and clerks who worked on the

instant case.

### 3.   BHW

Plaintiff argues that local counsel, Mr. Wakuzawa,

would be entitled to $335 per hour and that his legal assistant

would be entitled to $35 per hour.  [Suppl. Wakuzawa Decl. at

¶ 2.]  Mr. Wakuzawa has been practicing law since 1986.  The

Court finds his rate to be excessive in comparison to the

reasonable rate this Court has determined for Mr. Henkin.  The

Court finds $275 to be a reasonable hourly rate for Mr. Wakuzawa.

See JJCO, 2010 WL 3001924, at *9-10 (awarding $275 to an attorney

who was admitted to the Hawai`i State Bar in 1983).

### B.   Hours Reasonably Expended

Beyond establishing a reasonable hourly rate, a party

---

[4] The citation refers to the Findings and Recommendation to
Grant in Part and Deny in Part Defendant Isuzu Motors America,
LLC's Motion for Attorneys' Fees.  The district judge adopted the
findings and recommendations, as modified, but the modifications
did not relate to the discussion of hourly rates or the
deductions for clerical and ministerial tasks.  2010 WL 4272980,
at *7 (D. Hawai`i Oct. 21, 2010).

20

seeking attorney's fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted).  A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable.  See id. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987)).  A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case."  Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  See Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433-34).

        Under the traditional lodestar analysis, this Court would apply some deductions for unnecessarily duplicative tasks, including correspondence and document review, and for clerical items, such as coordinating the filing of court documents. Insofar as this Court is only using the lodestar analysis as a guide in this case and this Court has already applied substantial reductions to counsel's hourly rates, this Court will not apply its standard deductions to the number of counsel's hours.  The Court finds that, for purposes of the instant Fee Motion, the

21

hours that Plaintiff's counsel incurred in this case would be compensable under the lodestar analysis.

**C.** **Summary of Lodestar Comparison**

Thus, if the Court was to award lodestar fees to Plaintiff's counsel in the instant case, the fee for all work done thus far would be:

| B&M Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Shanon Carson | $240 | 165.1 | $39,624.00 |
| Russell Henkin | $350 | 1.2 | $    420.00 |
| James Wells | $150 | 14.4 | $ 2,160.00 |
| Sarah Schalman-Bergen | $150 | 62.2 | $ 9,330.00 |
| Patrick Madden | $130 | 2.3 | $    299.00 |
| Mileiddys Kim – paralegal | $ 85 | 10.5 | $    892.50 |
| | | **Total** | **$52,725.50** |

| SWCBK Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Carolyn Cottrell | $260 | 86.1 | $22,386.00 |
| Joshua Konecky | $260 | 0.6 | $    156.00 |
| Neil Bjorkman | $150 | 52.5 | $ 7,875.00 |
| Milan Laufik | $130 | 3.4 | $    442.00 |
| Drew Teti | $130 | 7.3 | $    949.00 |
| Lee Szor (post June 2011) | $125 | 4.2 | $    525.00 |
| Lee Szor (pre June 2011) | $100 | 45.0 | $ 4,500.00 |
| Mildred De La rosa – sec'y | $ 50 | 1.2 | $     60.00 |
| Charles Greenlee – paralegal | $ 85 | 9.4 | $    470.00 |
| Kristy Kitching – sec'y | $ 50 | 12.2 | $    610.00 |
| Brenda Renner – sec'y | $ 50 | 6.8 | $    340.00 |
| Alexander Simon – clerk | $ 50 | 9.1 | $    455.00 |
| Cathy Vittoria – sec'y | $ 50 | 8.5 | $    425.00 |
| Tracy Eastman – clerk | $ 50 | 0.2 | $     10.00 |
| Ilona Gazarova – clerk | $ 50 | 0.4 | $     20.00 |
| Rebecca Rosales – clerk | $ 50 | 4.6 | $    230.00 |
| Faalelelei Soliai – clerk | $ 50 | 0.1 | $      5.00 |
| | | **Total** | **$39,458.00** |

| BHW Attorney/Staff | Rate | Hours | Subtotal |
|---|---|---|---|
| Bruce Wakuzawa | $275 | 33.1 | $ 9,102.50 |
| legal assistant | $ 35 | 3.4 | $    119.00 |
| | | Subtotal | $ 9,221.50 |
| | 4.712% | State Excise Tax | $    434.52 |
| | | **Total** | **$ 9,656.02** |

This results in a total lodestar amount of $101,839.50 for all
counsel.  In order to arrive at the $366,666.67 in attorneys'
fees allocated in the Settlement Agreement, this Court would have
to apply a multiplier of approximately 3.6.

The Court finds that it is appropriate to apply a
multiplier in this case because of, *inter alia*: the risks class
counsel faced in taking on this case; counsel's ability to settle
the case quickly and efficiently; and the remaining work in this
case, associated primarily with the distribution of the
settlement funds.  The Ninth Circuit has noted that:

> We do not mean to imply that class counsel should
> necessarily receive a lesser fee for settling a
> case quickly; in many instances, it may be a
> relevant circumstance that counsel achieved a
> timely result for class members in need of
> immediate relief.  The lodestar method is merely a
> cross-check on the reasonableness of a percentage
> figure, and it is widely recognized that the
> lodestar method creates incentives for counsel to
> expend more hours than may be necessary on
> litigating a case so as to recover a reasonable
> fee, since the lodestar method does not reward
> early settlement.

Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n.5 (9th Cir.
2002) (citations omitted).  Further, although this Court has
found that the common fund doctrine does not apply in the instant
case, this Court also finds that case law addressing reasonable
multipliers in common fund cases is persuasive in the instant
case.  The Ninth Circuit has stated that: "'[M]ultiples ranging
from one to four are frequently awarded in common fund cases when

the lodestar method is applied.'" <u>Id.</u> at 1051 n.6 (some
citations omitted) (quoting <u>In re Prudential Ins. Co. of Am.</u>
<u>Sales Practices Litig.</u>, 148 F.3d 283, 341 (3d Cir. 1998)).  The
Court finds that the multiplier of 3.6 in this case, while on the
high end of multipliers applied in common fund cases, is
reasonable in the instant case.

        Having compared the total attorneys' fees in this case
with the amount that could be awarded under the lodestar
analysis, this Court FINDS that the total attorneys' fees which
Defendant has agreed to pay from the settlement amount is
manifestly reasonable.

**III. <u>Costs</u>**

        Plaintiff seeks the Court's approval of $14,452.69 in
counsel's out of pocket costs.  [Pltf.'s Suppl. Brief in Supp. of
Pltf.'s Unopposed Motion for Attorneys' Fees & Costs, filed
7/19/11 (dkt. no. 58), at 1.]  SWCBK incurred $10,423.02 for,
*inter alia*, computer research, mediator fees, and travel.  [Decl.
of Shanon J. Carson in Supp. of Pltf.'s Motion for Final Approval
of Class Action Settlement & for Attorneys' Fees & Costs, filed
6/20/11 (dkt. no. 45-1), at ¶ 17.]  B&M incurred $3,965.57 for,
*inter alia*, *pro hac vice* application fees, travel, and copying,
fax, and postage charges.  [Decl. of Carolyn H. Cottrell in Supp.
of Pltf.'s Motion for Final Approval of Class Action Settlement &
for Attorneys' Fees & Costs, filed 6/20/11 (dkt. no. 45-2),

24

Exh. B.]  BHW incurred $64.10 for, *inter alia*, copying costs and
messenger fees.  [Decl. of Bruce H. Wakuzawa in Supp. of Pltf.'s
Motion for Final Approval of Class Action Settlement & for
Attorneys' Fees & Costs, filed 6/20/11 (dkt. no. 45-3), at ¶ 3;
Suppl. Wakuzawa Decl., Exh. 1.]  Under a traditional analysis of
taxable costs and non-taxable costs, the Court would find that
all of Plaintiff's costs are compensable.  Plaintiff's Fee Motion
is therefore GRANTED.

        In addition, the Court notes that, at the hearing on
the Final Approval Motion, defense counsel pointed out the need
to clarify the fees due to Rust Consulting from the settlement
amount.  Stacy Roe, the Rust Consulting project administrator who
submitted declarations in this case, stated that Rust
Consulting's total fees and costs incurred for the administration
of claims in this case was $23,087.83, but that the parties'
Settlement Agreement limited the costs of claims administration
to no more than $15,000.  [Suppl. Roe Decl. at ¶ 25.]  That,
however, is an inaccurate representation of the Settlement
Agreement.  Although the Settlement Agreement provided that the
estimated claims administration costs would not exceed $15,000,
it also provided that, if the actual costs exceeded the estimated
costs, the excess could be deducted from the "Qualified
Settlement Fund".  [Settlement Agreement at ¶ 25.c.]  This Court
therefore directed Plaintiff's counsel to secure a declaration

from Rust Consulting clarifying whether it would seek the difference from the Qualified Settlement Fund or whether it was waiving the difference.

Plaintiff filed another declaration by Stacy Roe on July 27, 2011. [Dkt. no. 68.] It states that "Rust Consulting agreed to provide all necessary settlement administration services in the above-captioned matter for a total of $15,000.00." [Id. at ¶ 2.] The Court construes this declaration as Rust Consulting's agreement to accept $15,000.00 in full satisfaction of Plaintiff's obligation to pay for services rendered.

### FINAL APPROVAL OF SETTLEMENT

Rule 23(e) states, in pertinent part:

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

. . . .

(5) Any class member may object to the

proposal if it requires court approval under this
subdivision (e); the objection may be withdrawn
only with the court's approval.

"The purpose of Rule 23(e) is to protect the unnamed members of

the class from unjust or unfair settlements affecting their

rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th

Cir. 2008) (citation omitted).

The Court must examine the settlement as a whole for

overall fairness.  The Court must approve or reject the

settlement in its entirety; it cannot alter certain provisions.

See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

1998).  The Court must balance the following factors:

the strength of the plaintiffs' case; the risk,
expense, complexity, and likely duration of
further litigation; the risk of maintaining class
action status throughout the trial; the amount
offered in settlement; the extent of discovery
completed and the stage of the proceedings; the
experience and views of counsel; the presence of a
governmental participant; and the reaction of the
class members to the proposed settlement.

Id. (citations omitted).

The Court has already evaluated the proposed settlement

and found it to be "fair, reasonable, and adequate" as required

by Rule 23(e).  [Prelim. Approval Order at 3.]  The Court

reaffirms that finding here.

Despite being duly notified of the settlement, no Class

member has submitted objections to the settlement, and no Class

member appeared at the final fairness hearing to object to the

27

settlement.  Finally, Plaintiff has presented evidence that no

Class members have requested exclusion from the Class.  The Court

therefore FINDS that no Class member objects to this settlement,

and that this is further support for the Court's conclusion that

the settlement is fair, reasonable, and adequate.

## CONCLUSION

In light of the foregoing, the Court ORDERS as follows:

1.    The Court FINDS that the requirements of Federal

Rules of Civil Procedure Rule 23(e) have been satisfied and that

the Settlement Agreement is fair, reasonable, and adequate.

2.    The Court therefore GRANTS final approval of the

settlement and GRANTS Plaintiff's Unopposed Motion for Final

Approval of Class Action Settlement and Unopposed Motion for

Attorneys' Fees and Costs, both filed on June 20, 2011.

3.    The Court determines the effective date of the

settlement to be one week from the filing of this order.

4.    The Court ORDERS the distribution of the payments

set forth in the Preliminary Approval Order based on this Court's

determination of the effective date.

5.    Within sixty (60) days after the payment of the

settlement awards, Plaintiff's counsel shall file a report

showing the distribution of the settlement fund.

6.    Upon receipt of such report and approval by the

Court and the settling parties, this Court will dismiss

Plaintiff's claims against Defendant with prejudice.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 18, 2011.



_/S/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States District Judge

**LYNNE DONKERBROOK V. TITLE GUARANTEE ESCROW SERVICES, INC., ET AL; CIVIL NO. 10-00616 LEK-RLP; ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS**